**In the Matter of Helen PURDY d/b/a Atlas Bar.**

**No. 37823.**

United States District Court,
W. D. Missouri, W. D.

Jan. 28, 1970.

---

Dwight Roberts, Kansas City, Mo., for petitioner.

William F. Milligan, George V. Aylward, Jr., Kansas City, Mo., for bankrupt.

## ORDER AFFIRMING REFEREE'S TURNOVER ORDER

BECKER, Chief Justice.

This case is in this Court on a petition for review of the order of the Referee in Bankruptcy entered herein on September 5, 1969, under Section 67(c) of Title 11, United States Code. That

---

order directed the Executor of the Estate of Charles Wilhelm, deceased, (petitioner herein) to turn over to the Trustee in Bankruptcy herein "the sum of $5,500.00, less interest on $4,500.00 from January 15, 1968 to December 13, 1968." It was the finding of the Referee in the challenged order that:

"1. Helen Purdy was duly adjudicated a bankrupt on petition filed by her on December 13, 1968; thereafter William F. Milligan was appointed trustee.

"2. Schedule A–3 attached to the petition lists 'Charles Wilhelm deceased, c/o Earl J. Boughan, attorney, Rialto Building, 9th & Grand, Kansas City, Missouri, 64106 (per note)—$10,000.'

"3. By will dated September 5, 1967, paragraph VI, decedent bequeathed $10,000 to the bankrupt.

"4. On or about January 15, 1968, the bankrupt gave decedent her promissory note for $4,500.00. Her testimony was that this was the total amount that decedent ever advanced to her as a loan although she frequently cashed checks at the place of business.

"5. While the evidence was not clear, the bookkeeper who prepared the bankrupts' records made an entry for month of February 1968 under 'Loans Received' of 'C. Wilhelm—$1,500.00'. The bankrupt knew very little about her books and records and insisted that the $4,500.00 note included everything she owed decedent. The January 1968 ledger page was not introduced into evidence.

"6. I am inclined to believe the explanation of the bankrupt that the scheduled $10,000.00 debt to decedent was an error in that what she meant was that the estate owed her $10,000.00 under the will. Despite a thorough cross-examination by counsel for the executor her testimony was clear on this point."

Therefore, the Referee concluded that the executor "should distribute the $10,000.00 bequest to the Trustee of Helen Purdy, bankrupt" subject "to a set-off of $4,500.00 pursuant to Section 68 of the Bankruptcy Act" and that "said Executor is not entitled to a further set-off of $1,500.00 because of a failure of proof of the validity of such an obligation due from the bankrupt." The petitioning executor asserts that the Referee was in error in making findings of fact because bankrupt, in the first meeting of creditors, unequivocally admitted that she owed $10,000 to the decedent's estate and because the estate was listed as a creditor in the amount of $10,000 in the schedule originally filed by the bankrupt in this cause. Petitioner further asserts that it was reversible error for the Referee to exclude from the hearing of August 5, 1969, a deposition of the bankrupt taken May 21, 1969, for the purposes of these proceedings which would show, according to petitioner, that the loan of $1,500 was made after the making of the note for $4,500, rather than being included in the $4,500, as the Referee found. Petitioner also states that it was error to exclude from the August 5 hearing the transcripts of earlier hearings (held on January 14, 1969, and March 13, 1969).

On petitions for review of orders of the Referee under Section 67(c) of Title 11, United States Code, the findings of the Referee must be accepted by this Court unless they are "clearly erroneous." Shainman v. Shear's of Affton, Inc. (C.A.8) 387 F.2d 33; Solomon v. Northwestern State Bank (C.A.8) 327 F.2d 720; In re Clancy (D. Colo.) 279 F.Supp. 820. Under such standards, the order of the Referee in this instance must be upheld. Bankrupt admitted, on cross-examination by attorney for petitioner in the hearing of January 14, 1969, that she had scheduled the estate as a $10,000 creditor and that this was correct. Thereafter, however, in the subsequent hearings, she consistently denied that the estate was a $10,000 creditor and contended that she

only owed $4,500, as represented by the only promissory note in existence in which she was promisor and the decedent was promisee. She further sought to explain her prior "admission" by her lack of understanding of the question being asked her by the attorney for the estate. In the hearing of March 13, 1969, bankrupt testified that she knew, at the time the question was asked, that she was a beneficiary of the estate (although she did not know in what amount) and that the question was therefore confused in her mind; and that she hadn't included the fact that she was a beneficiary in her schedule of assets because it became known to her only a few days before the first meeting of 1969. Plaintiff further explained in the hearing of March 13, 1969, that she did not keep her own books; that they were kept by a bookkeeper and were confused and not well kept; that bankrupt had borrowed small sums at different times from the decedent; that the entries of the respective indebtednesses were made in her books at different times by the bookkeeper on orally-communicated information from bankrupt; that perhaps by error in duplicative communications from her to the bookkeeper, her books showed two entries reflecting $5,000 indebtednesses each to the decedent; that thereafter the auditor examined the books and scheduled the total indebtedness as $10,000 (although she denied that amount to him), advising her that it was safer practice to do so; and that the only indebtedness which she actually owed to decedent was that which was represented by a $4500 note held by petitioner which, at the time it was made, she and decedent agreed, represented the entirety of the indebtedness.

Petitioner, on the other hand, relies chiefly upon the "admission" of bankrupt in the first hearing of January 14, 1969. The character and persuasive weight of that "admission", however, is diminished, not only by the later repudiation and explanation of it by the bankrupt, but also by the fact that it came in answer to a manifold question. Attorney for the petitioner inquired as follows:

"Your testimony then is you owe the estate $10,000. Is that correct? You have listed that."

Since the answer of bankrupt could have been either to the inquiry whether the amount was listed or whether it was correct, it is not entirely clear from the record that plaintiff's reply of "yes" was meant to constitute an "admission" that she owed $10,000, or merely that she had scheduled it—inadvertently, as she later explained.

Petitioner further relies on evidence of a loan of $1500 made by Mr. Wilhelm to bankrupt in February 1968 as being proof that the note purportedly made in January 1968 for $4500 could not have represented the whole debt owed by bankrupt to decedent. The February 1968 ledger of her books was introduced into evidence. This showed a $1500 loan from the decedent. But the Referee was not convinced that the $1500 was not intended to be included in the $4500 which bankrupt testified to be all she owed, and, as partially supporting that conclusion, the Referee recited that the "January 1968" ledger page was not introduced in evidence. Petitioner states that "[t]he Referee further erred in stating that said ledger sheet showing this loan [of $1500] was not introduced in evidence. We wish to refer this Court to the Transcript of Proceedings dated August 5, 1969, where said ledger sheet (Exhibit #4) was offered and received in evidence, as shown at the bottom of page 12." Petitioner's statement is true, but immaterial, inasmuch as the Referee referred to the ledger page of January 1968 as not being in evidence, not the page for February 1968, which was in fact admitted in evidence, as shown by the transcript page above cited by petitioner. The Referee's reasoning was that, if the January 1968 page showed $4500 in loans while the February 1968 page showed $1500 more, the evidence would be more persuasive that the $4500 note did not represent all the debt, as bankrupt testified that

it did. When the incurring of the February debt might very well be consistent with bankrupt's testimony, however, there appears to be no reason why the Referee cannot believe the bankrupt.

■■ Petitioner further asserts that it was reversible error on the part of the Referee to exclude a prior deposition of plaintiff (taken for the purpose of these proceedings in bankruptcy) in which petitioner further sought to show the testimony which admitted there had been a February 1968 entry of a $1500 loan. The Referee excluded this deposition on the reasoning that a "proper foundation" had not been laid. The Referee stated on the record that, since bankrupt had no interest in respect of the disposition of the money in controversy, she could not be deemed a hostile witness whom petitioner could impeach by use of the deposition. But under the better evidentiary rule applicable in these proceedings, depositions of a party can be admitted as admissions without "laying a foundation" required by some authorities as a condition to impeaching a non-party witness. This rule applies to a party who is available at the trial. See e. g. Community Counselling Service, Inc. v. Reilly (C.A.4) 317 F.2d 239, 243. However, although there was error in not admitting the deposition, it was harmless. The evidence which petitioner wished to adduce thereby was merely cumulative proof of a "fact" which the Referee assumed to be true in his findings. Therefore, although this constituted error, it did not constitute reversible error inasmuch as it did not render the Referee's findings "clearly erroneous."[1]

Petitioner's other evidentiary contention that he should have been permitted to enter the transcripts of the hearings of January 14, 1969, and March 13, 1969, into evidence in the hearing of August 5, 1969, is without merit. The Referee was correct in ruling that the testimony in the transcripts was already in evidence, inasmuch as the prior two hearings constituted integral parts of the first meeting of creditors, as did the hearing of August 5, 1969. Further, the transcripts of the prior hearings were judicially noticeable, on request.

■ On the evidence of record, it cannot be deemed by this Court that the findings of the Referee are "clearly erroneous." In this case, all the documentary evidence which was admitted (and all other potential evidence which might have been admitted) either supported or could be construed as consistent with bankrupt's repudiation of her uncertain "admission" that the debt amounted to $10,000 and explanation thereof and her testimony that the $4500 was all of the debt. On issues where the bankrupt's credibility is an important factor, the rule is that the Referee's findings should be accorded great weight since he had an opportunity to hear and observe the bankrupt. In re Ostrer (C.A.2) 393 F.2d 646. Further, as the Referee noted, nothing appears in the record to indicate that the bankrupt had any interest in the disposition of the amount due her bankruptcy estate from the Wilhelm estate to prompt her to tell anything but the truth. And her testimony was corroborated by that of the auditor, who testified that she insisted to him that she did not owe $10,000 at the time when he advised her to schedule such an amount on her bankruptcy schedule as a safeguard to her.

It is therefore

Ordered that the Referee's order of turnover entered September 5, 1969, in

1. Petitioner also argues that the evidence in the depositions and transcripts which were refused shows that the creditor and bankrupt discussed two $5,000 entries in her books, and "therefore there was no confusion in her mind as to what she meant when the $10,000.00 was shown in her schedule." Although these were discussed, the evidence shows no clear admission prior to the hearing of January 14, 1969, that $10,000 was owed, and in fact that she denied to the auditor that she owed such an amount.

which petitioner is ordered to turn over the sum of $5500 less interest on $4500 from January 15, 1968, to December 13, 1968, be, and it is hereby, affirmed.