In the Matter of Patrick F. **SHEEHAN**, Bankrupt.

No. 34351-3.

United States District Court, W. D. Missouri, W. D.

Feb. 23, 1972.

Donald B. Clark, Kansas City, Mo., for bankrupt.

Robert D. Sandifer, Kansas City, Mo., for trustee.

Ralph L. Wright, Kansas City, Mo., for petitioner.

## ORDER AFFIRMING REFEREE'S ORDERS DENYING DISCHARGE IN BANKRUPTCY

WILLIAM H. BECKER, Chief Judge.

This estate in bankruptcy is before this Court for a second time on a petition for review from a final order of the referee in bankruptcy respecting the issue of whether a discharge should be granted to bankrupt. Previously, the referee granted the discharge sought by the bankrupt. Western Auto Supply, a creditor of the bankrupt, petitioned for review of the order granting discharge. In the order entered on January 17, 1970, this Court reopened the bankruptcy estate and remanded it to the referee, directing him to take additional evidence. In re Sheehan (W.D.Mo.) 308 F.Supp. 917. In that order, this Court noted that:

"The evidence only shows that the bankrupt admits that he received in excess of $300,000 in gifts from various concerns in his capacity as a buyer for Western Auto and that it is his claim that all of the monies so received 'went into Puritan [Manufacturing Company],' of which he became sole stockholder and which was also currently in bankruptcy as an 'asset' case. Nothing appears in this record to indicate whether the payments into Puritan were capital expenditures . . . , nor, in the latter case, that bankrupt has any creditor claim pending in that case, nor the size of the current assets of Puritan in the hands of the trustee, nor the amounts of any later withdrawals of funds from Puritan. . . . It is apparent from the referee's finding that there are $250,000 to $500,000 of assets unexplainably unaccounted for, that the evidence thus far in the record is not sufficient to sustain either the finding that the records kept by bankrupt were sufficient or the finding that the disappearance of these assets is satisfactorily explained, especially in view of the bankrupt's original contention that the monies all 'went into Puritan.'" 308 F.Supp. at 921.

After the remand of the case, the referee in bankruptcy held two additional hearings in the case—one on March 16, 1970, in accordance with the directions of this Court (as a result of which the referee initially determined to deny discharge) and one on November 27, 1970, after a petition of the bankrupt, on reconsideration of that initial determination. On March 8, 1971, the referee reaffirmed the denial of the discharge, en-

tering his "statement, findings of fact and conclusions of law," which, together with the findings entered on July 10, 1970, are the subject of the present petition for review.

The crucial findings and conclusions made by the referee in denying discharge were that (1) "Patrick F. Sheehan, bankrupt, was a buyer for Western Auto, who in addition to his salary from Western Auto, took money from suppliers to Western Auto from 1956 to 1965 in an amount of $259,253.41, which amount is more or less agreed to"; (2) "Bankrupt . . . admits he did receive the money in question on the approximate dates alleged; that as fast as he was receiving this money, it was being invested in Puritan"; (3) "Bankrupt did receive as salary while employed at Western Auto $88,951.05 from 1958 through March of 1965"; (4) "Bankrupt did receive in 1964 $25,202.71 severance pay from Western Auto"; (5) Bankrupt received some $9,560.06 in the form of "salary" from Puritan Manufacturing Company; some $5,000.00 "from 1850 Estes Avenue Building on March 9, 1964"; and "on June 16, 1965, a refund from the Federal Government of $5,878.-41"; (6) that the evidence adduced by bankrupt consisted mainly of personal check records which accounted for only a fraction of the amounts received by the bankrupt and which, furthermore, were inconclusive with respect to the specific disposition of the funds ("Most deposits and many expenditures cannot be accounted for except by the explanation that the money came from somewhere and went somewhere"); (7) "From the extended hearings and from observing bankrupt at these hearings the referee states and believes the bankrupt . . . cannot satisfactorily establish this fact from the records introduced."

On reconsideration, the referee noted that the evidence consisted almost entirely of the conjecture and opinion of the bankrupt and an accountant respecting what disposition of bankrupt's income would be shown if the records were in existence. The actual records in existence could not show more than $14,800.00 by way of payment from bankrupt or his wife to the Puritan Manufacturing Company.[1] Therefore, on reconsideration the referee ordered that his prior order denying discharge "be reaffirmed."

In his petition for review of those orders, findings and conclusions in this Court the bankrupt has made the following eight specifications of error:

(1) Failure to "receive, consider and rule upon the evidence offered on behalf of the bankrupt justifying and explaining the failure of the bankrupt to preserve and produce sufficient books and records, and in failing to find that the bankrupt had not destroyed, falsified or concealed any books of account and records."

(2) Failure "to find that the bankrupt had satisfactorily explained losses of assets and deficiency of assets to meet the bankrupt's liabilities" after having found "that the bankrupt is without funds and has dissipated all the sums in question."

(3) The findings that objections to discharge must be sustained and that the evidence offered on reconsideration was only cumulative of the "insufficient and unsatisfactory" explanations previously made for disposition of the monies were "erroneous and contrary

---

1. In his final findings entered on March 8, 1971, the referee found that, in addition to checks written by Marilyn B. Sheehan, bankrupt's wife, to Puritan in the total amount of $14,800, checks totaling $17,-000 were written to Puritan on a checking account of Cartwright, Inc., and another $13,000 were written on an account of "Helen M. Clark or B. M. Sheehan". With respect to the latter amounts, however, there is no evidence whatever to identify bankrupt or his wife as the depositors of the funds in the bank accounts under the other corporation's and individual's names.

to the evidence presented to the Referee."

(4) Failure to "admit, receive and consider" "evidence of payment by the bankrupt [during the period 1958 through 1966] of Federal and State income taxes in the amount of $56,132.84."

(5) Failure to "admit, receive and consider . . . evidence of funds invested in the amount of $164,432.00 in Pritan (sic) Manufacturing Company [during the period 1958 through 1966.]"

(6) Failure to "admit, receive and consider . . . evidence of investment by the bankrupt of the sum of $43,007.32 in Fairway Auto Supply [during the period 1958 through 1966]."

(7) Failure to "admit, receive and consider . . . the cost of living expenses for the bankrupt and his family during the period of nine years amounting in total to not less than $107,574.00."

(8) Failure to "admit, receive and consider . . . evidence of a loan by the bankrupt to Prairie Products of $1,000 not repaid and the expenses of Cartwright, Inc., paid by the bankrupt in the amount of $4,623.85 [during the period 1958 through 1966]."

■ This Court must begin its review of the orders of the referee mindful of the basic, controlling principles that the findings of the referee are entitled to weight, Girsh v. Katchen (C.A. 10) 382 F.2d 560, and that the findings of the referee should be upheld unless they are clearly erroneous or contrary to

law. Shainman v. Shear's of Affton, Inc. (C.A.8) 387 F.2d 33; Girsh v. Katchen, *supra*. With those principles in mind, a review of the evidence considered by the referee leads this Court to the conclusion that his basic, necessary findings have the support of substantial evidence. Further, under the law applicable to this case, the conclusions of the referee, based upon his findings of fact, are correct. Section 32(c)(2) of Title 11, United States Code, provides that "The court shall grant the discharge unless satisfied that the bankrupt has . . . destroyed, mutilated, falsified, concealed, *or* failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case." (Emphasis added.) Under the facts of this case as found by the referee on substantial evidence, bankrupt can conceivably account for, by means of books and records, some $126,969.57 of the $393,845.64 found by the referee to constitute the amount received by plaintiff in the period extending from 1956 to June 16, 1965.[2] In respect to the claims of bankrupt, the most glaring discrepancy concerns his claimed investment in Puritan Manufacturing Company to July 31, 1966, in the amount of $164,432.00. Of this amount, the actual records of the bankrupt only show some $24,800 paid into Puritan Manufacturing Company by him and his wife.[3] In view of the fact that some $166,442.91, at least, is not accounted for by the books and records in evidence in this case, the referee was warranted in this case in denying discharge under the provisions of §

2. In the order of July 10, 1970, the referee in bankruptcy found that "Personal bank records of Patrick F. Sheehan from August, 1958–December, 1964, Missouri State Bank shows deposits of $10,300.69 and disbursements of $102,169.57"; and that Marilyn B. Sheehan wrote 5 checks totaling $24,800 to Puritan (in the order on March 8, 1971, this figure was corrected to $14,800, see note 1, *supra*). The bank

records for 1966 add some possible $10,-921.11 to this figure.
Under the contentions of the bankrupt, some of which are granted by this Court for the purposes of this review, large amounts are still left unaccounted for by the evidence in this case. See *infra* in the body of this order.

3. Corrected to $14,800 in the order of March 8, 1971. See note 1, *supra*.

32(c)(2), Title 11, United States Code. Under that provision, it is held that:

"it is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt and his business transactions for a reasonable period in the past, may be ascertained. Records of substantial completeness and accuracy are required so that they may be checked against the mere oral statements or explanations made by bankrupt. In re Underhill, 82 F.2d 258, 259, 260 (C.C.A.2d). See also In re Yaeger, D.C., 28 F.Supp. 117." In re Wright (E.D.Mo.) 247 F.Supp. 648, 657.

See also Moffett v. Union Bank (C.A.9) 378 F.2d 10, 11, to the following effect:

"Primarily the duty to keep records is measured by what is necessary to ascertain the bankrupt's financial status . . . The key factor to consider in regard to the duty to keep books is the complexity of the matters and transactions which would be recorded."

In the case at bar, in which it is agreed that some $259,253.41 of the assets of the bankrupt were admittedly "under the table" payments received by him (as found by the referee), attended in the first instance by covertness and secrecy, it is imperative that books and records of some type be produced to account for the disposition of some substantial portion of these funds for any accurate determination of bankrupt's current financial status to be made. "The burden was upon the objector to show that the records kept by the bankrupt were inadequate." Moffett v. Union Bank, *supra*, at 11. In this case, on the foregoing facts showing nearly $170,000 not accounted for by bankrupt's books and records, this burden was met by the objecting creditor in this case. The oral conjectures of bankrupt and his accountant concerning what the books and records would show in this regard, if they were produced, cannot constitute, or sufficiently substitute for, adequate books and records, in the absence of a reasonable explanation for the absence of the material books and records. In re Wright, *supra*. "Since the Amendment of the Bankruptcy Act in 1926 . . . the bankrupt must now really have the necessary records or explain why the circumstances of his case excuse his failure." In re Wright, *supra*, 247 F.Supp. at 657. Neither the record, the findings, or the briefs in this case contain or refer to any satisfactory explanation of the bankrupt for failure to keep adequate records. "The burden was . . . upon the bankrupt to show that the circumstances justified the failure to keep adequate records." Moffett v. Union Bank, *supra*, 378 F.2d at 11. With respect to the applicable test on this issue, see In re Halpern, 387 F.2d 312, 315, 316 (2d Cir. 1968), to the following effect:

"Whether failure to keep books should bar a discharge in bankruptcy is 'a question in which instance of reasonableness in the particular circumstances.' . . . To meet this test, the bankrupt must show that a failure to keep books comports with the 'vague, but imperative, dictates of ordinary fair dealing, or common caution . . .' . . . In most cases, the complexity of the bankrupt's business activities determines whether he should have maintained books . . . But, as we noted in Morris Plan Indus. Bank of New York v. Dreher, 144 F.2d 60, 61 (2d Cir. 1944), this 'is a loose test, concerned with the practical problems of what can be expected of the type of person and type of business involved.' For example, in Dreher, an 'itinerant peddler of rags and old clothes,' who had incurred debts over a decade earlier, was granted a discharge because people in his business would not ordinarily keep books. Similarly, in In re Pinko, 94 F.2d 259, 261 (7th Cir. 1938), a mere salaried employee was held not required to keep books. In that case, the books of an earlier construction business run by the bankrupt were in the possession of his

former wife; his failure to place them before the referee was excused because the objecting creditor had 'made no effort to require their production . . . ' See also In re Lepine, 4 F.Supp. 808 (E.D.N.Y.1933), aff'd per curiam, 70 F.2d 1017 (2d Cir. 1934); In re Weisman, 1 F.Supp. 723 (S.D.N.Y.1932); cf. Morris Plan Indus. Bank v. Henderson, 131 F.2d 975 (2d Cir. 1942). Where the bankrupt, on the other hand, is the principal or a truly responsible officer of a corporation, and incurs substantial obligations as a result of corporate activities, he is required to keep books and records . . . Such a bankrupt does not meet his burden by merely referring to the corporation's books; unless the objecting creditors concede that those books will adequately show the bankrupt's financial condition and business transactions, the bankrupt must produce the books . . . By the same token, production of corporate records will not suffice where the bankrupt engaged in substantial personal business not reflected on the corporate books . . . "

The bankrupt in this case was identified with Puritan Manufacturing Company and other corporations and did personal business as well. He should therefore have kept, and offered in evidence before the referee, complete records to show accurately the precise financial relationships between him and Puritan and the other corporations and precise accountings for the receipt and disbursing of funds between them. It is plain that any other rule in a case such as that at bar would permit the secreting of assets in substantial quantities by the simple artifice of confusing corporate and individual assets and keeping few or no records with respect to their disposition. In his brief in this Court, the bankrupt has contended (1) that the referee ignored the express direction of this Court to make written findings on the relevant portions of the corporate records in the bankruptcy case involving Puritan Manufacturing Company and (2) that a finding of intentional concealment or destruction of records by the bankrupt, which the referee did not make, is necessary to bar discharge under the provisions of § 32(c)(2), Title 11, United States Code.

■■ With respect to the first contention, bankrupt states in his brief that:

"The Referee's orders fail adequately to comply with the mandate contained in the order of reference in that the findings of fact do not dispose of the factual questions presented by the bankrupt's evidence of his substantial investment in Puritan Manufacturing Company and also failed to describe the evidence comprising the Court's file on the bankruptcy proceeding for the corporation." [4]

But there is no contention made that the records in the file of the Puritan Manufacturing Company bankruptcy es-

4. In this regard, the petitioning creditor has stated that:

"The petitioning creditor disagrees completely with the bankrupt's statement of facts that the Referee's Orders of July 10, 1970 and March 8, 1971 fail adequately to comply with the mandate of the District Court 'to make complete findings of fact on what all the evidence shows regarding the material transactions of bankrupt with the Puritan Manufacturing Company.' The petitioning creditor disagrees because the so-called mandate was not entered until July 13, 1970 in the District Court's Order Amending 'Order Reopening Estate in Bankruptcy and Remanding to Referee.' Thus the mandate was entered 3 days after the Referee's Order of July 10, 1970."
But it was clear from this Court's initial order of January 15, 1970, which is officially reported at In re Sheehan (W.D. Mo.) 308 F.Supp. 917, that complete evidence and findings on this issue should be taken and made. Further, the referee prefaced his order of March 8, 1971, by quoting the order of July 13, 1970, and followed it, as noted in the body of this order, by finding relevant facts from In re Puritan Manufacturing Co., Inc. (W.D.Mo.) In Bankruptcy No. 38307.

tate actually show precisely the financial relationships between bankrupt and Puritan nor the disposition of the funds here in question.[5] And this Court's review of those records does not establish any clear, visible relationship between specific receipts of bankrupt and specific disbursements by him into the corporation.[6] As found by the referee, bankrupt has not shown that any appreciable sums in excess of $14,800 were actually invested by him during this period of time.

Further, the referee made certain specific findings with respect to the case file in this Court in the Puritan Manufacturing Company case, as follows:

"In Puritan Manufacturing Co., Inc., Bankruptcy No. 38307, no claim for money loaned or advanced was filed by bankrupt. In Puritan Manufacturing Co., Inc., Bankruptcy No. 38307, a claim for $33,500.00 was filed by Fairway Auto Supply, Inc., by Donald Clark, Agent. At a hearing before the court, the claim was subordinated to the claims of other creditors."

In the final analysis, these relevant findings, under the circumstances, were sufficient in this regard.[7] In accordance with the rule of In re Halpern, supra, corporate records alone are insufficient to account for substantial personal business when bankrupt made no effort to produce records showing that more than $14,800 of Puritan's assets came from bankrupt or his wife. The evidence offered by bankrupt and his accountant in the hearing of November 27, 1970, was that all of the $390,000 plus received by him from 1956 to 1965 would be shown by certain books and records, *if they were available or produced.* Bankrupt testified, in the November 27, 1970, hearing, to his having

made an effort to "trace down some of these missing records" but stated nothing with respect to the degree of success. The evidence thus fully warrants the conclusion that adequate books and records were not produced by bankrupt.

Nor was an adequate explanation made of the failure to keep adequate books and records. The only contention briefed in this regard is that "[a]lthough the bank records which were produced and offered in evidence were incomplete, there was no showing of any concealment. . . ." But, as the Court stated in In re Wright, *supra,* § 32(c)(2), Title 11, United States Code, bars discharge for simple failure to keep adequate records, as well as intentional concealment and destruction of them. "[F]ailure to keep adequate books or records must no longer be with an intent to conceal; the bankrupt must now really have the necessary records or explain why the circumstances of his case excuse his failure." 247 F.Supp. at 657. It is further stated by bankrupt in his brief on review that:

"Prior to bankruptcy, an investigation of the bankrupt's income had been commenced by the Internal Revenue Service, and for this purpose, bank statements, cancelled checks and other personal records of the bankrupt, as well as the records of Puritan Manufacturing Company, Fairway Auto Supply and Cartwright Incorporated were furnished to and taken into custody by examining agents of the Internal Revenue Service. During portions of the same period, records of the bankrupt were also made available and furnished to the Trustee in the bankruptcy proceeding for Puritan Manufacturing Company and, for purposes of the prior litigation and also

---

5. In its brief, the petitioning creditor states: "The Puritan bankruptcy files showed nothing to indicate investments in Puritan by the bankrupt." This statement is not countered by anything to the contrary from the bankrupt.

6. The district court may independently make findings from the record made in

the bankruptcy court. See In re Capitano (D.La.) 315 F.Supp. 105.

7. These were the only relevant findings in this regard. Any failure to go further and discuss this evidence is a formal defect and does not invalidate the referee's determination. In re Haupt & Co. (S.D. N.Y.) 304 F.Supp. 917.

in compliance with the direction of the Referee in the subject case, records of the bankrupt were delivered to the objecting creditor, Western Auto Supply, for their examination. Simultaneous investigation and inquiry as to the records of the bankrupt obviously resulted in a wide dispersal of such records which were examined by numerous persons, and also resulted in delay and handicap to the bankrupt in presenting such records for the purposes here of meeting the charges presented by the creditor's objections to the discharge.

"As to his personal income and expenses, it is acknowledged that the bankrupt did not maintain journals or ledgers. Records of receipts and disbursements consisted of bank statements and cancelled checks. It was the practice of the bankrupt to deposit all income in a bank account and to pay expenses by check. Regular books of account, journals and ledgers were maintained for Puritan Manufacturing Company, Fairway Auto Supply and Cartwright Incorporated. To the best of his knowledge and ability, the bankrupt has produced and made available all bank statements, cancelled checks and the books of account of Puritan Manufacturing Company, Fairway Auto Supply and Cartwright Incorporated and he has also produced and introduced in evidence all bank statements and cancelled checks from all banks with which he or any member of his family did business during the period of time under examination. These records are incomplete in that bank statements are not included for various periods, cancelled checks are not continuous and consecutive, statement entries are not in each instance supported by cancelled checks or deposit records and the latter are not in each instance supported by bank statements. For various periods, no original bank records are included."

But no explanation is given why the records are still not available as of the date of the last hearing before the referee, November 27, 1970, when bankrupt had had some four years since the beginning of the bankruptcy case to marshal such evidence. Bankrupt testified at the hearing of November 27, 1970, that there was "tangible evidence where the money went" which existed on that date and that "they can get it." (See p. 3, Referee's Findings of Fact, March 8, 1971.) In fact, the bank statements and cancelled checks offered were so few in number that their weight as evidence is almost negligible, in view of the large sums not accounted for. Such a general explanation cannot suffice under the law. Further, as noted below, bankrupt admitted on November 27, 1970, that the records could be obtained, but did not offer them in evidence.

After consideration of the general issues on the petition for review, it is appropriate to turn to the specific assignments of error made by the bankrupt in his petition for review.

(1) *Failure of the referee to receive, consider and rule upon evidence explaining the failure to preserve and produce sufficient books and records and to find that bankrupt had not destroyed, falsified or concealed any books of account and records*

The first part of this assignment of error is answered by the material directly foregoing. In his testimony on November 27, 1970, bankrupt's statement that the records were existent and available appeared to negate any claim that he was unable to produce the relevant and material books and records and, as implied above, it is unnecessary to make any finding on intentional concealment, falsification or destruction of records when failure to keep or produce them is sufficient to bar discharge. In re Wright, *supra.*[8]

But the ground of failure to keep adequate books and records as defined by § 32(c)(2), Title 11, United States Code,

8. Bankrupt cites cases and authorities to the effect that, ordinarily innocent wrongdoing is not enough to bar a discharge.

(2) Failure of referee to find that "deficiency of assets to meet the bankrupt's liabilities" was explained by the referee's finding ". . . that the bankrupt is without funds and has dissipated all the sums in question."

In his order entered on July 10, 1970, at page 14, the referee stated that:

"From the extended hearings and from observing bankrupt at these hearings the referee states and believes that the bankrupt is without funds and has dissipated all the sums in question but he cannot satisfactorily establish this fact from the records introduced."

This Court does not believe that the emphasized portion constituting a favorable comment on the bankrupt's credibility is itself a finding of fact in view of the admission that it is not supported by satisfactory or substantial evidence. If it is a finding of fact that the bankrupt has in fact disposed of all monies so that they are beyond his power of retrieval, this Court does not confirm it because it is not supported by any substantial evidence and is thus clearly erroneous.

(3) Denial of discharge was erroneous as contrary to the evidence. For the reasons stated above, in the treatment of bankrupt's general allegations on the petition for review, this contention is rejected by this Court.

(4) Failure of the referee to admit, receive and consider evidence of payment by the bankrupt of Federal and State income taxes in the amount of $56,132.84 in the period 1958 through 1966.

(5) Failure of the referee to admit, receive or consider evidence concerning $164,432.00 allegedly paid by bankrupt to Puritan Manufacturing Company.

(6) Failure of the referee to admit, receive or consider evidence of $43,007.32 allegedly invested by bankrupt in Fairway Auto Supply in the period 1958 through 1966.

(7) Failure of the referee to admit, receive or consider evidence of cost of living for 9 years at $12,075 per year.

(8) Failure of the referee to admit, receive or consider evidence of $1,000 loaned to Prairie Products and $4,623.85 paid to Cartwright, Inc.

The bankrupt sought to prove the amount paid for taxes by offering papers purporting to be work sheets of his tax returns for these years. The ground for their exclusion from evidence is not clear. It may have been because the work sheets were not the "best evidence" of payment, i. e., the original tax returns, when such "best evidence" was in existence and unavailable. If the finding could be made that the best evidence was available, the rejection of the evidence was proper. In re Mabilfit Equipment of Florida, Inc. (C.A.5) 415 F.2d 841; Sylvania Elec. Products, Inc. v. Flanagan (C.A.1) 352 F.2d 1005. And it appears that the referee, in determining realistically the expenditures of bankrupt for the years in question could take judicial notice that some amounts had been paid—though perhaps not as much as should have been, in view of the later admitted investigation by the Internal Revenue Service. But, for the purposes of this review, this Court will disregard the ruling of inadmissibility made by the referee and assume that the record shows the payment of some $56,132.84 in state and federal taxes for this period in question.

The Court will do the same for the accountant's estimate that living expenses for the nine-year period were $12,075.00 per year and will assume for the pur-

in providing that failure may be justified by reasonable explanation is thereby not entirely out of the purview of intentional wrongdoing, or wrongdoing with callous

disregard, even though, under the rule of In re Wright (E.D.Mo.) 247 F.Supp. 648, a specific finding of intention need not be made.

poses of this petition that living expenses for the period totaled some $108,675.00. It would be unrealistic to assume that bankrupt and his family had no living expenses for the period in question.

But what is unrealistic and impermissible to assume, in view of the provisions of § 32(c)(2), Title 11, United States Code, is that $164,342.41 has been paid to Puritan, $43,007.32 to Fairway, $1,000 to Prairie Products, and $4,623.85 to Cartwright, Inc., in the absence of books and records supporting those assumptions. In view of the governing rule of In re Wright, *supra,* other evidence than the books and records on these amounts was properly rejected by the referee. Thus, accepting the bankrupt's contentions that he has paid $56,132.84 in taxes for the period and otherwise incurred some $108,675.00 in living expenses during the period, and that he has paid some $14,800 directly into Puritan Manufacturing Company, a sizeable portion of the income is left unaccounted for—some $124,237.80 at least.[9] The picture is thus not complete or even substantially so and bankrupt has not and cannot give any satisfactory or reasonable explanation for the failure to keep and produce books and records. In view of the foregoing considerations, any failure of the referee to exclude or fail to consider evidence of payment of taxes and living expenses, if error, was harmless error. Cf. In re Purdy (W.D. Mo.) 311 F.Supp. 236.

For the foregoing reasons, it is

Ordered that the orders of the referee in bankruptcy entered herein on July 10, 1970, and March 8, 1971, denying bankrupt any discharge in bankruptcy be, and they are hereby, affirmed.

9. This difference is obtained by subtracting the sums effectively claimed to have been expended from the total of $393,845.64 specifically found by the referee (in the order of July 10, 1970) to have been taken in during the 9-year period 1956–1965 by the bankrupt. It is thereby necessarily assumed that the $126,969.57 found in that order to have been disbursed (by bank records) by bankrupt represents many of the same expenditures as this figure of $124,237.80 which can be claimed effectively by the bankrupt. This is without a doubt the case with the $14,800 provably paid to Puritan, which shows up as such in both accountings. Even assuming that the $124,237.80 and the $126,969.57—less $14,800—figures represent wholly different expenditures, however, a sizeable difference between that sum and $393,845.64 still exists.